# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PAULINE GARCIA, | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | **CIVIL ACTION NO.** |
| | § | |
| MICHAEL J. ASTRUE, | § | **SA-06-CA-0742 FB (NN)** |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:**   **Hon. Fred Biery**
         **United States District Judge**

### I. Introduction

Plaintiff Pauline Garcia seeks review and reversal of the administrative denial of her

applications for Social Security Disability Insurance (SSDI) and Supplemental Security Income

(SSI) by the defendant, the Commissioner of the Social Security Administration (SSA).  Garcia

contends that the Administrative Law Judge (ALJ) erred by determining that she is not disabled.

Garcia asks the district court to reverse the decision denying her benefits and to render judgment

in her favor.  After considering Garcia's brief in support of her complaint,[1] the brief in support of

the Commissioner's decision,[2] the record of the SSA proceedings, the pleadings on file, the

applicable case authority and relevant statutory and regulatory provisions, and the entire record in

---

[1]Docket entry # 14.

[2]Docket entry # 16.

this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this Memorandum and Recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits for disposition by recommendation.[3]

## II. **Jurisdiction**

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## III. **Administrative Proceedings**

Based on the record in this case, Garcia fully exhausted her administrative remedies prior to filing this action in federal court. Garcia applied for SSDI and SSI benefits on July 17, 2003, alleging disability beginning June 25, 2003.[4] The Commissioner denied the applications initially and on reconsideration.[5] Garcia then asked for a hearing.[6] A hearing was held before the ALJ on June 3, 2005.[7] The ALJ issued a decision on November 18, 2005, concluding that Garcia was not disabled within the meaning of the Social Security Act (the Act).[8] Garcia asked for review of

---

[3]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[4]SSA record, pp. 56 & 488.

[5]*Id*. at pp. 27-9, 491-92 & 499.

[6]*Id*. at p. 43.

[7]*Id*. at pp. 507-31.

[8]*Id*. at p. 18.

the decision on December 13, 2005.[9]  The SSA Appeals Council concluded on July 7, 2006 that

no basis existed for review of the ALJ's decision.[10]  The ALJ's decision became the final

decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. §

405(g).  On August 30, 2006, Garcia filed this action seeking review of the Commissioner's

decision.[11]

### IV.  Issue Presented

> Is the ALJ's decision that Garcia is not under a "disability," as
> defined by the Act supported by substantial evidence and does the
> decision comport with relevant legal standards?

### V.  Analysis

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court

is limited to determining whether substantial evidence supports the decision and whether the

Commissioner applied the proper legal standards in evaluating the evidence.[12]  "Substantial

evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."[13]  Substantial evidence

"must do more than create a suspicion of the existence of the fact to be established, but 'no

---

[9]*Id*. at p. 13.

[10]*Id*. at p. 6.

[11]*See* Garcia's complaint, docket entry #3.

[12]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[13]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[14]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[15]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[16]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[17]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[18]

### 1. Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[19]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by

---

[14]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[15]*Martinez*, 64 F.3d at 173.

[16]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[17]*Martinez*, 64 F.3d at 174.

[18]*Id*.

[19]42 U.S.C. § 1382(a)(1) & (2).

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[20]  A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work.[21]

### 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[22]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[23]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[24]  If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[25]  The second step involves

---

[20]42 U.S.C. § 1382c(a)(3)(A).

[21]42 U.S.C. § 1382c(a)(3)(B).

[22]20 C.F.R. §§ 404.1520 and 416.920.

[23]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[24]20 C.F.R. §§ 404.1520 and 416.920.

[25]*Id.*

determining whether the claimant's impairment is severe.[26]  If it is not severe, the claimant is

deemed not disabled.[27]  In the third step, the Commissioner compares the severe impairment with

those on a list of specific impairments.[28]  If it meets or equals a listed impairment, the claimant is

deemed disabled without considering her age, education, or work experience.[29]  If the impairment

is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional

capacity and the demands of her past work.[30]  If the claimant is still able to do her past work, the

claimant is not disabled.[31]  If the claimant cannot perform her past work, the Commissioner

moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities,

age, education, and work experience, to do other work.[32]  If the claimant cannot do other work,

she will be found disabled.  The claimant bears the burden of proof at the first four steps of the

sequential analysis.[33]  Once the claimant has shown that she is unable to perform her previous

work, the burden shifts to the Commissioner to show that there is other substantial gainful

employment available that the claimant is not only physically able to perform, but also, taking

into account her exertional and nonexertional limitations, able to maintain for a significant period

---

[26]*Id.*

[27]*Id.*

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Leggett*, 67 F.3d at 564.

of time.[34]  If the Commissioner adequately points to potential alternative employment, the burden

shifts back to the claimant to prove that she is unable to perform the alternative work.[35]

## B. Findings and Conclusions of the ALJ

In the instant case, the ALJ reached his decision at Step 5 of the evaluation process.  At

step one, the ALJ determined that although Garcia was working as a part-time home health care

provider, Garcia's work did not rise to the level of substantial gainful activity.[36]  At Step 2, the

ALJ determined that Garcia was impaired by adenocarcinoma of the colon and

osteoporosis/osteopenia.  The ALJ characterized these impairments as severe, but determined in

Step 3 that the impairments did not  meet or medically equal one of the impairments listed at

Appendix I, § 13.18.  Section 13.18 is the listing which deals with ademocarcinoma of the large

intestine.[37]  At Step 4, the ALJ determined that Garcia can no longer perform her past relevant

work, but that she has the ability to perform the full range of sedentary work, as well as some

light work.[38]  At Step five, the Commissioner applied the SSA's Medical-Vocational Guidelines[39]

and determined that Garcia is not disabled under rule 201.27.

## C. Garcia's Allegations of Error

Garcia claims that the ALJ erred in determining that she is not disabled because: (1) the

---

[34]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[35]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[36]SSA record, pp. 19 & 25.

[37]*Id*. at p. 19.

[38]*Id*. at p. 24.

[39]20 C.F.R. pt. 404, subpt. P, appx. 2.

ALJ failed to find that her depression is a severe impairment, (2) the ALJ failed to properly evaluate the credibility of her testimony about chronic pain, (3) the ALJ failed to consider the combined effects of her medical impairments, and (4) the ALJ improperly applied the Medical-Vocational Guidelines.

Despite these complaints, no evidence shows that Garcia is disabled. Instead, the evidence shows that Garcia has had medical problems, but those problems have been treated and she can perform at least the full range of sedentary work.

Garcia's medical records show that Garcia went to the hospital on June 19, 2003, complaining about abdominal pain.[40] A CT scan of her abdomen showed colonic intussusception[41] of the sigmoid colon telescoping into the rectum.[42] Garcia was taken to the operating room that evening for an exploratory laparotomy.[43] During that surgery, the surgeon saw a mass on the sigmoid colon. The sigmoid colon is the last part of the colon and is shaped like the letter "s."[44] The pathology of the mass showed invasive adenocarcinoma[45]—"[a] cancer

---

[40]*Id*. at. p. 97.

[41]An intussusception is a "telescoping or infolding of the intestine, so that one part slips or invaginates into the other, somewhat like the smaller tube of a telescope which slips into the larger." J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. I-3978 (Matthew Bender 2005).

[42]SSA record, p. 102.

[43]*Id*. at. p. 416. A laparotomy is a "surgical cut through the wall of the abdomen. . . . Generally, the term implies the purpose of exploring the interior of the abdomen for the aid it may give in the matter of a diagnosis." J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. L-693 (Matthew Bender 2005).

[44]J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. S-3299 (Matthew Bender 2005).

[45]SSA record, p. 97.

growing out of gland tissue"[46]—that is, colon cancer.  The following day, Garcia underwent a

sigmoid colectomy[47] in which a 17-centimeter section of Garcia's large intestine was removed.[48]

Shortly thereafter, Garcia began chemotherapy—the treatment of cancer with chemical

substances—to prevent the cancer from returning.  Garcia underwent four cycles of

chemotherapy, completing the treatments on March 19, 2004.[49]  Since that time, Garcia has

undergone numerous tests as part of her followup care.  No test has shown that Garcia's cancer

has returned.[50]

    Although cancer-free, Garcia continued to complain about abdominal pain after she

completed her chemotherapy.  A CT scan of her abdomen and pelvis on September 23, 2004,

showed a large cyst on Garcia's left ovary.[51]  Garcia's gynecologist attributed Garcia's continued

---

[46]J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. A-2736 (Matthew Bender 2005).

[47]A colectomy is the "[s]urgical removal of a portion of the colon (large bowel), or of the entire colon."  J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. CH-3673 (Matthew Bender 2005).

[48]SSA record, p. 100.

[49]Id. at. p. 413.

[50]Id. at. p. 179 (CT scan of liver on August 25, 2003 showed no metastatic disease); p. 301 (CT scan of liver on October 23, 2003 showed liver, spleen, kidneys, adrenal glands and pancreas are unremarkable.); p. 421 (CT scan of abdomen and pelvis on  January 20, 2004 revealed no pathological lymphadenopathy and no evidence of metastatic disease); p. 341 (CT scan of abdomen on May 24, 2004 showed a normal liver and unremarkable gallbladder, pancreas, spleen, adrenals, and kidney; p. 340 (colonoscopy on June 14, 2004 was normal); p. 332 (PET CT whole body scan on December 13, 2004 showed no focal areas of increased pathologic activity in the cervical area, no focal areas of increased pathologic activity in the thorax, no sites of increased pathologic activity in the abdomen, no areas of increased pathologic activity in the liver); p. 372 (CT of abdomen and pelvis on January 18, 2005 showed normal pancreas, bilateral kidneys, spleen and adrenal glands).

[51]Id. at p. 393.

complaints about abdominal pain to scarring tissue on an ovary.[52]  Because of the pain and the

risk that her cancer might return, Garcia underwent a total hysterectomy on February 17, 2005.[53]

In a total hysterectomy, a surgeon removes the uterus and the cervix.[54]  The surgeon who

performed the hysterectomy saw no signs of cancer.

As of two years after her colectomy, there is no evidence that Garcia's cancer has

returned.  Garcia, however, has developed osteopenia.  A bone density test of Garcia's hip and

spine on June 2, 2005 showed osteopenia in Garcia's lumbar spine and femoral neck, reflecting a

moderate increased fracture risk.[55]  Osteopenia is a "condition marked by a deficiency of bone;

the presence of less than the normal amount of bone."[56]

In determining whether these medical problems meet or medically equal a listed

impairment, the ALJ considered the most closely analogous listing—section 13.18.  The ALJ

correctly determined that Garcia's colon cancer did not meet or medically equal the listing

because Garcia's colon cancer was operable and has not recurred; Garcia had no squamous cell

carcinoma of the anus, recurrent after surgery; and Garcia has no evidence of metastases beyond

the regional lymph nodes.[57]  Garcia, however, complains that the ALJ failed to find that her

---

[52]*Id*. at p. 363.

[53]*Id*. at pp. 355-60.

[54]J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. T-2057 (Matthew Bender 2005).

[55]SSA record, p. 391.

[56]J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. O-2665 (Matthew Bender 2005).

[57]*See* 20 C.F.R. pt. 404, subpt. P., app. 1, § 13.18 (setting out the requirements for disability under
that listing).

depression is a severe impairment, but the record contains no evidence that Garcia's depression is a severe impairment.

First, the record does not include a diagnosis of depression.  The only evidence about depression is a brief reference in Garcia's medical record,[58] a letter from Garcia's cancer doctor stating that Garcia looked depressed,[59] and Garcia's testimony that she is depressed.  In the letter, Dr. Albert Dekker—a cancer specialist who treated Garcia for two years after her colectomy—stated that Garcia "looked in emotional distress," "is easy to cry and feels overwhelmed," and "looks depressed to me despite being on antidepressant medications."  Dr. Dekker is not a psychologist or a psychiatrist and has not prescribed any psychiatric medications for Garcia.  Garcia's testimony does not provide much more evidence.  Garcia testified only that she has depression,[60] she takes Wellbutrin for depression, and she has not seen a psychiatrist.[61] This evidence does not suggest a severe impairment.  An impairment is not severe "if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."[62]  Here, there is no indication that Garcia's depression is an abnormality that would interfere with her ability to work.  Most post-cancer patients undoubtedly live with fear that their

---

[58]SSA record, p. 295 (doctor's note dated October 28, 2003, reflecting that Garcia said she was taking Prozac and that admitting that her abdominal pain might be related to increased stress in her home life).

[59]*Id*. at p. 388.

[60]*Id*. at p. 521.

[61]*Id*. at p. 529.

[62]*Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (citation omitted).

cancer will return and find that uncertainty depressing.  After experiencing her medical problems, Garcia is understandably depressed at times.  But taking medication for depression does not equate to a severe impairment that makes person unable to work.  Although Garcia criticizes the ALJ for applying his own standard in his consideration of her depression and for failing to consider the effect of her depression on her ability to work, the ALJ actually conducted a detailed analysis of Garcia's claim of depression.

First, the ALJ observed that Garcia did not claim disability based on depression until the hearing.[63]  By that time, Garcia's cancer was in remission and over a year had passed since Garcia completed her chemotherapy.  Second, the ALJ noted that there was only one reference in Garcia's medical record about her emotional state.[64]  That reference was Dr. Dekker's letter. Notably, Garcia obtained the letter after her hearing.  The ALJ correctly observed that Garcia's medical record did not substantiate her assertion of disability due to depression.[65]  Third, the ALJ stated that Garcia's ability to work as a part-time home health care worker did not suggest disabling depression.[66]  This analysis does suggest that the ALJ applied his own standard, but shows that the ALJ carefully considered whether any evidence indicated that depression had more than a minimal effect on Garcia's ability to work.  The ALJ did not err by not characterizing Garcia's depression as severe because substantial evidence supports the ALJ's determination that Garcia's depression is not severe.

---

[63]SSA record, p. 20.

[64]*Id*.

[65]*Id*.

[66]*Id*. at p. 22.

Garcia also criticizes the ALJ for failing to evaluate her credibility with respect to her complaints about chronic pain.  However, the ALJ could not have been any more specific, except perhaps to affirmatively state that he did not believe Garcia.  For example, the ALJ specifically addressed Garcia's testimony that she needed a cane to walk because she felt pain in her bones.[67] The ALJ noted that although Garcia testified that she began using a cane about six weeks before her hearing in June 2005 because of bone pain following chemotherapy, Garcia's chemotherapy was completed in March 2004.  The ALJ also noted that although Garcia testified that her legs simply gave out because of bone pain, there was nothing in the record supporting such a claim.[68] The ALJ further noted that Garcia suggested that she experienced bone pain after being diagnosed with osteopenia, but that nothing in the record supported such a claim.[69]  The ALJ found no medical basis for Garcia's claim that she cannot even comb her hair.[70]  The ALJ may not have explicitly stated that he did not believe that Garcia suffers chronic pain, but that finding—as well as the reasons for that finding—is implicit in the ALJ's discussion of Garcia's claims.

Garcia also maintains that the ALJ misapplied the Vocational-Medical Guidelines because he failed to consider Garcia's limitations resulting from depression and pain.  The SSA applies Medical-Vocational Guidelines[71] in cases where a claimant is not doing substantial

---

[67]*Id*. at p. 23.

[68]*Id*.

[69]*Id*.

[70]*Id*.

[71]20 C.F.R. pt. 404, subpt. P, appx. 2.

gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work.[72]  These rules apply in Garcia's case because she is not performing substantial work and her severe impairments prevent her from doing her past relevant work.  The Medical-Vocational Guidelines use data reflecting major functional and vocational patterns taken from the Dictionary of Occupational Titles.[73]  Each rule uses four factors—exertional level, age, education, and previous work—to reach a disability decision.  The Commissioner must first determine which rule correlates to the claimant's exertional limitations, age, education and prior work experience.[74]  "If that rule dictates a finding that the claimant is disabled, then eligibility for disability benefits is established. . . . However, if the applicable rule directs a finding that plaintiff is not disabled, then, only, must the Commissioner consider nonexertional limitations and utilize the testimony of a vocational expert."[75]

In this case, the ALJ applied rule 201.27—one of the rules that applies to sedentary work.[76]  The rule applies to a younger individual age 18-44 who is a high school graduate and whose previous work is unskilled.  The rule dictates a finding of "not disabled."  Garcia does not

---

[72]20 C.F.R. § 404.1569.

[73]*Id.*

[74]*Rodriguez v. Barnhart*, No. SA-05-CA-1203, 2006 WL 3779777 (W.D. Tex. Nov. 6, 2006), at * 2.

[75]*Id.*

[76]The determination that Garcia can perform sedentary work appears generous.  A residual functional capacity assessment completed on August 22, 2003—two months after Garcia's colectomy—reflects the following: no exertional limitations, no postural limitations, no manipulative limitations, no visual limitations, no communicative limitations, no environmental limitations, and allegations credible but not expected to last more than 12 months.  SSA record, pp.  168-74.

contest that she is a younger individual, a high school graduate or that her previous work experience was unskilled, but only complains that the ALJ did not consider the effect of her depression or pain. The ALJ, however, determined that Garcia's depression was not a severe impairment and that Garcia did not suffer chronic pain. The ALJ's analysis properly ended with the application of rule 201.27 because he determined that Garcia could perform the full range of sedentary work and because the existence of jobs in the national economy is reflected in the decisions shown in the Medical-Vocational Rules.[77]

**D. Summary**

Substantial evidence supports the ALJ's decision that Garcia is not disabled. Although there may have been a time when Garcia was unable to work because of her medical condition, she was never disabled under the SSA definition of disability. Being disabled for the purposes of SSI or SSDI benefits requires the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . .which has lasted or can be expected to last for a continuous period of not less than twelve months."[78] The only evidence in Garcia's record indicating that she was unable to engage in any substantial gainful activity due to her impairments is a Texas Department of Human Services form,[79] dated August 25, 2003. In that form, one of Garcia's doctors stated that Garcia would be unable to work while she

---

[77]*See* 20 C.F.R. pt. 404, subpt. P, appx. 2, § 200.00(b).

[78]42 U.S.C. § 1382c(a)(3)(A).

[79]The instructions for completing the form indicates that the form was required because Garcia applied for public assistance in the form of food stamps based on disability.

15

underwent chemotherapy.[80]  But Garcia's chemotherapy lasted for seven months.  Even if Garcia

was unable to work while undergoing chemotherapy, she was not disabled under the SSA's

definition of disabled because she was unable to work for less than twelve months.

## VI.  Recommendation

Because substantial evidence supports the ALJ's determination that Garcia is not

disabled, I recommend that Garcia's request for relief (docket entry # 3) be DENIED and that the

Commissioner's decision denying Garcia benefits be AFFIRMED.

## VII. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and

recommendation on all parties by either (1) electronic transmittal to all parties represented by

attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those

not registered by certified mail, return receipt requested.  Written objections to this memorandum

and recommendation must be filed within 10 days after being served with a copy of same, unless

this time period is modified by the district court.[81]  **Such party shall file the objections with the**

**Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**

A party filing objections must specifically identify those findings, conclusions or

recommendations to which objections are being made and the basis for such objections; the

district court need not consider frivolous, conclusive or general objections.  A party's failure to

file written objections to the proposed findings, conclusions and recommendations contained in

---

[80]SSA record, p. 325.

[81]28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

16

this report shall bar the party from a *de novo* determination by the district court.[82]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[83]

       **SIGNED** on June 15, 2007.

*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[82]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[83]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).